# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-2411 FMO (PJWx) | Date | February 18, 2014 |
|---|---|---|---|
| Title | Lorna Beeks v. ALS Lien Services, et al. | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Vanessa Figueroa | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorney Present for Plaintiff(s): | Attorney Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     **(In Chambers) Order Re: Pending Motion**

Having reviewed and considered all the briefing filed with respect to ALS Lien Services' ("defendant" or "ALS") Motion for Summary Judgment and/or Partial Summary Judgment/ Adjudication ("Motion"), the court concludes that oral argument is not necessary to resolve the Motion. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## INTRODUCTION

On March 21, 2012, Lorna Beeks ("plaintiff" or "Beeks") filed a Complaint against ALS alleging various claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").[1]  The parties have engaged in several rounds of motions to dismiss followed by amendments to plaintiff's Complaint and, on September 18, 2012, the court issued an Order granting in part and denying in part defendant's motion to dismiss the Second Amended Complaint ("Court's Order of September 18, 2012").  Plaintiff filed her Third Amended Complaint ("TAC"), which is now the operative complaint.  Defendant filed another motion to dismiss on October 22, 2012, and plaintiff filed a motion for summary adjudication on December 18, 2012.

The court denied both motions without prejudice and ordered defendant to file a motion for summary judgment as the moving party.  (See Court's Order of February 14, 2013).  Defendant filed its Motion on March 4, 2013.  In response, plaintiff filed a Cross-Motion for Summary Adjudication of Issues on April 8, 2013. This motion was stricken the same day, but the court will consider the memorandum of points and authorities filed in support of this motion as plaintiff's Opposition to defendant's Motion ("Opposition") and will sua sponte summarily adjudicate any appropriate issue in plaintiff's favor. See Fed. R. Civ. P. 56(f); Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982) ("[T]he overwhelming weight of authority supports the conclusion that if one party moves for summary judgment and . . . it is made to appear from all the records, files,

---

[1]     The Complaint also alleged claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., which have since been dismissed.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-2411 FMO (PJWx) | Date | February 18, 2014 |
|----------|------------------------|------|--------------------|

| Title | Lorna Beeks v. ALS Lien Services, et al. |
|-------|-------------------------------------------|

affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party.").   Defendant filed its Reply to plaintiff's Opposition ("Reply") on April 25, 2013.

## STATEMENT OF FACTS

Plaintiff is the owner of a condominium located at 25925 Narbonne Avenue, #3, Lomita, California.  (See Declaration of Sandra L. Gottlieb ("Gottlieb Decl."), Exh. 1 at 13; Plaintiff's Statement of Genuine Issues Submitted in Opposition to Motion ("SGI") at ¶ 1).  The condominium is governed by covenants, conditions and restrictions set by the Lomita Horizon Homeowners Association, ("Lomita Horizon" or "the association"), which require plaintiff and other homeowners in the common interest development to pay homeowners' association assessments. (See Gottlieb Decl., Exh. 3, 47-48 & Exh. 13 at 98-99; SGI at ¶¶ 2-3).  Plaintiff lived in the condominium for four years, and has rented it out for the last year-and-a-half. (See Declaration of Lorna Beeks ("Beeks Decl.") at ¶ 3).

In July 2011, plaintiff fell behind in the payments of her assessments to Lomita Horizon. (See Gottlieb Decl., Exh. 13 at 99; SGI at ¶ 9).  On October 18, 2011, Lomita Horizon notified defendant that plaintiff was delinquent and entered into a written agreement (the "Delinquent Assessment Collection Agreement") with defendant for collection of the assessments on Lomita Horizon's behalf.  (See Gottlieb Decl., Exh. 4; SGI at ¶¶ 10 &12).  Defendant sent a letter to plaintiff on October 24, 2011 (the "Oct. 24, 2011, Letter"), which demanded payment in the amount of $1,607.50.  (See Gottlieb Decl., Exh. 5; SGI at ¶ 13).

On November 22, 2011, plaintiff's attorney sent a letter to ALS (the "Nov. 22, 2011, Letter") advising ALS that she was represented by counsel with regard to the subject debt, and included a cashier's check for $1,220.00.  (See Declaration of Louis P. Dell, ¶ 6 & Exh. 19; Defendant's Reply to SGI ("Response to SGI") at ¶ 71).  Plaintiff herself sent a letter to defendant on December 1, 2011, (the "Dec. 1, 2011, Letter"), regarding scheduling a date for internal dispute resolution with the association.  (See Gottlieb Decl., ¶ 9 & Exh. 7).  On December 14, 2011, defendant sent a letter to plaintiff in response to the Dec. 1, 2011, Letter, informing her that she would be contacted shortly to participate in internal dispute resolution (the "Dec. 14, 2011, Letter").  (See id., ¶ 10 & Exh. 8).  Defendant sent another letter directly to plaintiff on December 22, 2011, (the "Dec. 22, 2011, Letter"), returning the cashier's check (uncashed) sent by plaintiff's attorney on November 22, 2011, because it was not payment in full.  (See id., ¶ 11 & Exh. 9).

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict.  Anderson v. Liberty

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id.

Where the moving party bears the burden of proof on the claim at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (quotations and citations omitted); see also Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."); Anderson, 477 U.S. at 252, 106 S.Ct. at 2512 (parties bear the same substantive burden of proof as would apply at a trial on the merits). A party that bears the burden of proof has the burden of establishing a prima facie case on its motion for summary judgment. See UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting Indus. of U.S. and Can., AFL-CIO v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).

If the moving party does not bear the burden of proof at trial, it has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial."[2] Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. SEC v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982). If the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." Nissan Fire & Marine Ins. Co., Ltd.

---

[2] "In determining any motion for summary judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-3.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|----------|---------------------------|------|----------------------|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

        In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party. Barlow v. Ground, 943 F.2d 1132, 1134 (9th Cir. 1991), cert. denied, 505 U.S. 1206 (1992). However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (more than a "metaphysical doubt" is required to establish a genuine issue of material fact). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.

        With these standards in mind, the court now turns to the arguments raised in the parties' papers.

### DISCUSSION

I.        CONSUMER DEBT COVERED BY THE FDCPA.

        Defendant argues, as a threshold matter, that the FDCPA does not apply in this case because "the FDCPA regulates the collection of consumer, as opposed to commercial, debt," and plaintiff was renting out her condominium "at the time [ ] the alleged collection issues arose, and she was not residing at the property." (Motion at 6.) Thus, according to defendant, "the property and hence the assessments were not used or incurred 'primarily for personal, family, or household purposes,' but were used for and incurred in her rental business and hence not covered by the FDCPA." (Reply at 4.)

        The FDCPA was passed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Under the FDCPA, the term "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5).

        The parties have not cited, and the court is not aware of, any Ninth Circuit authority addressing whether homeowners' association assessments constitute debts within the meaning of the FDCPA. However, other courts have held that the obligation to pay homeowners' association assessments qualifies as a debt under the FDCPA. See, e.g., Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 698 F.3d 290, 294 (6th Cir. 2012), cert. denied, 133 S.Ct. 1726 (2013) ("Haddad correctly asserts that his obligation to pay past-due assessments qualifies as a 'debt' because the obligation arose from his original purchase transaction of the underlying

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

property."); Ladick v. Van Gemert, 146 F.3d 1205, 1207 (10th Cir.), cert. denied, 525 U.S. 1002 (1998) ("[W]e conclude that the condominium assessment owed by Mr. Ladick to his condominium association qualifies as a debt under the FDCPA"); Newman v. Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477, 481-82 (7th Cir. 1997) ("[T]hese assessments are collected in order to improve and maintain commonly-owned areas used by each unit owner.  The assessments thereby directly benefit each household in the development.  As a result, the assessments have a personal, family, or household purpose.") (internal citations omitted); Caron v. Charles E. Maxwell, P.C., 48 F.Supp.2d 932, 934-35 (D. Ariz. 1999) ("[T]he Court concludes that homeowners' association fees constitute debt under the FDCPA."); Thies v. Law Offices of William A. Wyman, 969 F.Supp. 604, 608 (S.D. Cal. 1997) ("The Court finds that homeowner association fees for maintenance and improvement of common areas within a housing development are a service primarily for personal, family, and household purposes.").

The Haddad case is particularly persuasive.  In Haddad, the plaintiff purchased a condominium as his primary residence and thus became obligated to pay assessments to the condominium association.  See 698 F.3d at 292.  Plaintiff timely paid the regular assessments and lived at the home for years until relocating, at which time the condominium was either vacant or leased.  See id.  The defendant collection agency sent a letter to plaintiff informing him that he was in default on his obligation to pay fees due to the association and requested payment.  See id.  The plaintiff filed an action under the FDCPA.  See id.  The Sixth Circuit considered whether the plaintiff's obligation to pay past-due assessments to the homeowners' association qualified as a debt under the FDCPA.  See id. at 293-94.  The defendant argued that "the debt at issue cannot be considered 'primarily for personal, family, or household purposes' because [the plaintiff] currently rents out his property.  In other words, the [defendant] argue[d] that the relevant time for determining whether a debt is for personal, family, or household purposes is the time when the collection activities began."  Id.  The court found the defendant's argument unpersuasive, noting that it was "clear that the obligation to pay in this circumstance arose in connection with the purchase of the home itself, even if the timing and amount of particular assessments was yet to be determined," and "[b]ecause the statute's definition of a 'debt' focuses on the transaction creating the obligation to pay, the obligation to pay is derived from the purchase transaction itself."  Id. at 294.  Thus, "[t]he most probative time in determining the purposes that the individual has for purchasing a property is at the time of the transaction, not when an agency's collection efforts begin," and "[e]ven though [the plaintiff] no longer resides at the property, the record [was] clear that he purchased the condominium for personal usage and lived there for fifteen years."  Id.

Unlike the Haddad case, the court is not persuaded by the cases cited by defendant. Defendant first directs the court to Baird v. ASA Collections, 910 N.E.2d 780 (Ind. Ct. App. 2009), where the Court of Appeals of Indiana held that the plaintiff's liability for allegedly delinquent homeowner's dues and assessments were not consumer debt covered by the FDCPA.  See id. at 787.  There, however, "[n]o evidence was presented that [the plaintiff] expressed her intent to use the lots for 'personal, family, or household purposes' pursuant to the FDCPA provisions.  To the contrary, [the plaintiff] testified that the lots in question were unbuildable and were sold to purchasers who desired a lot for access to the recreational facilities [nearby].  Moreover, the

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

evidence established that [the plaintiff] bought the lots for investment purposes[.]" <u>Id.</u> at 786.

In <u>Aniel</u> v. <u>TD Serv. Co.</u>, 2011 WL 109550 (N.D. Cal. 2011), "the loan money was used to pay for real property, which in turn was rented to tenants." <u>Id.</u> at *4. The plaintiffs argued that many of the tenants were their relatives, but the court granted the defendants' motion to dismiss because that statement was not in the complaint and did not suggest that the tenants were "primarily" family members. <u>Id.</u> Again, it was clear in that case that the house was purchased as a "rental property." <u>See id.</u>

Finally, defendant offers <u>Aniel</u> v. <u>EMC Mortg. Corp.</u>, 2011 WL 835879 (N.D. Cal. 2011). In that case, the court found that "since it [was] apparent that Plaintiffs obtained the mortgage while the Property was being used as a rental, their FDCPA [claim] is subject to dismissal on this independent ground." <u>Id.</u> at *5, n. 6. Thus, this case actually supports the proposition that the correct point in time to consider the plaintiff's intent is at the time of the transaction.

In short, the court is persuaded by the Sixth Circuit's analysis, especially given the Ninth Circuit's admonition to "'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature.'" <u>Slenk</u> v. <u>Transworld Sys., Inc.</u>, 236 F.3d 1072, 1075 (9th Cir. 2001) (quoting <u>Bloom</u> v. <u>I.C. Sys., Inc.</u>, 972 F.2d 1067, 1068 (9th Cir. 1992)) (alteration in original). As such, the court should examine plaintiff's intent at the time she purchased her condominium. <u>See Haddad</u>, 698 F.3d at 294; <u>Miller</u> v. <u>McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.</u>, 214 F.3d 872, 874 (7th Cir. 2000) (noting that the Ninth Circuit "assumed in <u>Bloom</u>, 972 F.2d at 1068-69, that the relevant time is when the loan is made, not when collection is attempted") (internal citation shortened). In other words, if plaintiff purchased her condominium in order to live in it, rather than to rent it out, her past-due assessments are debts covered by the FDCPA.

Here, plaintiff states that she "resided at the above address [the relevant condominium] for approximately 4-years. For about the last 1-1/2 years, I have been renting it out to someone else." (Beeks Decl. at ¶ 3). Given the amount of time plaintiff occupied the condominium, it appears that she purchased it for her personal use. However, the evidence relating to plaintiff's intent is not completely clear. Adding together the four years plaintiff lived in the condominium, plus one-and-one-half years of renting it out, accounts for a total of five-and-one-half years. However, according to the deed, plaintiff purchased the condominium on April 25, 2006, approximately seven years before plaintiff executed her declaration. (<u>See</u> Gottlieb Decl., Exh. 1 at 13). Thus, there is a period of approximately one and a half years that is unaccounted for and there is no evidence as to when that period occurred or to what use the property was put during that period. Accordingly, there is a genuine issue of material fact as to plaintiff's purpose at the time she purchased the condominium. <u>See</u> Fed. R. Civ. P. 56(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

II.   CLAIM 1: UNLAWFUL THREAT TO RECORD A LIEN.

Plaintiff asserts that ALS violated the FDCPA when it threatened to record a lien prior to dispute resolution.  (See Opposition at 5-7).  Under California Civil Code § 1367.4(b)(2), "[a]n association . . . , prior to recording the lien, shall offer the owner and, if so requested by the owner, participate in dispute resolution[.]"[3]  Id. (repealed 2014) (codified in §§ 4800-20).  In the Oct. 24, 2011, Letter that defendant sent to plaintiff, it stated that "if your delinquency is not paid, unless disputed in writing, a lien will be recorded against your property," (Gottlieb Decl., Exh. 5 at 67), and "[a]ll payment plans must provide for full payment of the delinquent amounts set forth above, additional charges incurred during the repayment period, including any fees and/or costs related to the administration of the payment plan.  A lien will be recorded to secure the amounts owed during the repayment plan."  (Id. at 68).

Under the FDCPA:

> [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>> . . .
>> (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken.
>> . . .
>> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  Plaintiff contends that by sending the Oct. 24, 2011, Letter containing the language concerning recording a lien, defendant violated these provisions of the FDCPA.  (See Opposition at 5-7).

However, as defendant notes, the Oct. 24, 2011, Letter offered plaintiff the option of requesting dispute resolution with Lomita Horizon.  (See Motion at 7).  In a section entitled, "Procedures for Disputing Debt," the Oct. 24, 2011, Letter states:

> You may submit a written request for dispute resolution pursuant to the Association's Internal Dispute Resolution Policy (IDR), whereby the Board of Directors or a designee of the Board will meet with you to confer regarding your debt, in an attempt to resolve the dispute.  You also have the right to request alternative dispute resolution (ADR) with a neutral third party

---

[3]  Unless otherwise noted, any section references refer to the California Civil Code.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

pursuant to Civil Code § 1369.510.  In order to request ADR, you must serve a Request for Resolution, which complies with the requirements of Civil Code § 1369.530.  The cost of ADR shall be shared by you and the Association. (Civil Code § 1369.540)

(Gottlieb Decl., Exh. 5 at 68).

Defendant did not say, and neither statement cited by plaintiff suggests, that a lien would be recorded regardless of whether plaintiff requested dispute resolution or that a lien would be recorded while plaintiff was awaiting the requested dispute resolution session.  (See, generally, Gottlieb Decl., Exh. 5).  One of the statements plaintiff challenges, namely "if your delinquency is not paid, unless disputed in writing, a lien will be recorded against your property[,]" (id., Exh. 5 at 67), implies that if the delinquency is disputed, a lien will not be recorded.  Here, plaintiff was offered this opportunity in the October 24, 2011, Letter, which was prior to any lien being recorded. Indeed, plaintiff did engage in IDR with Lomita Horizon, resulting in the discharge of her debt, and no lien was ever recorded.  (See Gottlieb Decl., Exh. 10; SGI at ¶ 27).  Thus, it is clear that defendant was not threatening to record a lien prior to dispute resolution, and was not threatening to take an action that could not legally be taken under the FDCPA.

III.    CLAIM 2: INCORRECT AMOUNT OF PRINCIPAL DEBT.

The FDCPA prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect a debt, including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1). Plaintiff argues that the Oct. 24, 2011, Letter improperly charged a late fee of $10.00 and interest in the amount of $236.50 in December 2009 and January 2010, respectively.  (See Opposition at 8).  She states that these improper charges remained part of the balance on her homeowners' association account, resulting in an inflated demand of $246.50 more than was actually due.  (See id.).

Defendant asserts that because the late charge and interest fee were posted to plaintiff's account more than a year before she filed suit, the FDCPA's statute of limitations bars her from disputing those charges now.  (See Motion at 8-9).  Defendant is correct that "[a]n action to enforce any liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  However, defendant's potential liability arises from the Oct. 24, 2011, Letter that demanded plaintiff pay $1,607.50.  The allegedly improper charges, which fall outside the statute of limitations, "merely serve[] as the grounds for the alleged illegality of Defendant's conduct and is not the conduct which is itself alleged to have violated the FDCPA."  Skinner v. Asset Acceptance, LLC, 876 F.Supp.2d 473, 477-78 (D.N.J. 2012).

In Skinner, the defendant sent an initial collection letter to the plaintiff, but failed to post a bond in violation of New Jersey law.  876 F.Supp.2d at 474.  This initial letter was outside the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

statute of limitations. Id. at 477.  The defendant sent several more collection letters, including one within the statute of limitations. See id. at 474-75.  The court held that where there is "a discrete act which violates the FDCPA[, it] is alone actionable even if prior violative communications fall outside the statute of limitations[.]" Id. at 477-78.

Here, plaintiff filed this suit on March 21, 2012.  The subject letter was sent on October 24, 2011, which is well within the time limit of one year required by the statute of limitations. See Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997) (citing with approval cases determining that the FDCPA's statute of limitations begins to run when a harassing collection letter is mailed because the mailing date is the debt collector's last opportunity to comply with the Act).

Defendant next argues that under § 1366(e)(3), which provides that if an assessment is delinquent, an association may recover interest "at an annual rate not to exceed 12%," the association was entitled to charge plaintiff $236.50 in interest in light of her 2009 delinquencies, "which is the very interest posted to her account." (Motion at 9).  On August 28, 2009, defendant sent a letter to plaintiff to notify her that it had recorded a lien on her condominium due to her failure to pay assessments, fees, costs, and other charges. (See Beeks Decl., Exh. 16 at 1). Defendant made a written demand for payment on December 15, 2009, to Litton Loan Servicing LP, ("Litton"), plaintiff's loan servicer, in the amount of $6,593.50. (See id., Exhs. 17-18).  On December 16, 2009, Litton disbursed $6,593.50 to defendant. (See id., Exh. 18 at 1).

The Dec. 15, 2009, Letter included the following charges: $3,850.00 in Assessments through December 31, 2009; $493.00 in ALS Cost; $1,218.00 in ALS Fees; $170.00 in Late Fees; $236.50 in Interest; $100.00 in Mgmt Admin Fees; $175.00 in Other Collection HOA; and $351.00 in TSG. (See Beeks Decl., Exh. 17 at 2).  Not all of the charges listed in the Dec. 15, 2009, Letter appear on plaintiff's homeowners' association account; that account shows charges for assessments, late fees, and what is listed as "Administrative Fees," but were presumably listed as "Other Collection HOA" in the letter (given that the "Administrative Fee" charges listed on the account through December 31, 2009 add up to $175.00). (See Gottlieb Decl., Exh. 4 at 55-56). Plaintiff's homeowners' association account also includes an "ALS – Interest" charge of $236.50. (Id. at 56).

On January 15, 2010, plaintiff's homeowners' association account was credited $4,431.50. (See Gottlieb Decl., Exh. 4 at 56).  This amount apparently consists of the assessments, late fees, Other Collection HOA, and the interest charge ($3,850.00 + $170.00 + $175.00 + $236.50 = $4,431.50).  Presumably, ALS kept the remaining $2162.00 ($6593.50 - $4,431.50 = $2162.00) in ALS Cost, ALS Fees, Mgmt Admin Fees, and TSG ($493.00 + $1,218.00 + $100.00 + $351.00 = $2162.00).  Thus, it appears that the interest charge of $236.50 was posted to plaintiff's homeowners' association account.  Under § 1366(e)(3), the association was the entity that had a right to the interest, and the credit that contained her interest payment (the $4,431.50) had already been posted to her account.  Thus, if the interest charge did not appear on her account, plaintiff would gain a $236.50 credit on her account, which would have been applied to future assessments instead of being applied to the interest that she owed the association for her

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

delinquency.  As such, the interest charge was not improper.

The late fee is another matter.  Under the Lomita Horizons [sic] Homeowners Association Assessment Collection Policy, "[a]ssessments not received within twenty-six (26) days of the stated due date are delinquent and shall be subject to a late charge of ten dollars ($10) for each delinquent assessment per unit."  (Gottlieb Decl., Exh. 3 at 47).  Additionally, "[r]egular monthly assessments are due and payable on the first day of each month."  (Id.).  At the time the Dec. 15, 2009, Letter was sent, the December assessment was due and payable, but 26 days from the due date had not yet passed, and thus plaintiff's December assessment was not yet subject to a late fee.  Given that Litton disbursed the payment of the total amount due on plaintiff's account on December 16, 2009, (see Beeks Decl., Exh. 18 at 1), plaintiff's December assessment should never have been subject to a late fee.  As of December 15, 2009, there were 16 total late fees on plaintiff's homeowners' association account, (see Gottlieb Decl., Exh. 4 at 55-56), equaling a total of $160.00.  However, defendant collected $170.00 in late fees, (see Beeks Decl., Exh. 17 at 2), ten dollars more than was due.  On December 27, 2009, a late fee of $10.00 for the December assessment was posted to plaintiff's account.  (See Gottlieb Decl., Exh. 4 at 56).

Defendant makes no argument as to why this late fee is proper.  (See, generally, Motion at 8-11; Reply at 7-8).  Instead, defendant argues that under Donohue v. Quick Collect, Inc., 592 F.3d 1027 (9th Cir. 2010), false but non-material representations are not actionable under § 1692f.  (See Motion at 9).  However, the court is not persuaded that Donohue governs here.  In that case, defendant sought to collect $32.89, which was labeled as 12 percent interest on the principal.  Donohue, 592 F.3d at 1033.  In fact, the $32.89 was comprised of finance charges of $24.07 and post-assignment interest of $8.82.  Id.  The court held that the mislabeling did not violate § 1692f because "the total owed was accurately stated."  Id. at 1034.

Unlike Donohue, here, the $10.00 charge was not a proper charge.  Thus, because this charge remained on plaintiff's balance, defendant's demand in the Oct. 24, 2011, Letter overstated the amount plaintiff owed by $10.00, violating § 1692f(1).  See Duffy v. Landberg, 215 F.3d 871, 875 (8th Cir. 2000) ("[A]lthough the interest calculations were admittedly only slightly overstated, the letters seeking these overstated interest charges were nonetheless an attempt to collect interest not permitted by law, and therefore a violation of the plain language of section 1692f(1).").

Finally, defendant argues that "[t]he FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt," Palmer v. I.C. Sys., Inc., 2005 WL 3001877, *8 (N.D. Cal. 2005) (internal citations omitted), and "ALS reasonably and appropriately rel[ied] on the account information provided to it by the Association[.]"  (Reply at 8).  What defendant omits, however, is that the quoted language arose as part of the court's consideration in Palmer of the "bona fide error" defense under 15 U.S.C. § 1692k(c).  See Palmer, 2005 WL 3001877, at *7-8.  Section 1692f is a strict liability provision subject to a due care defense.  See id. at *6 (citing Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004)).  Here, defendant has introduced no evidence regarding the due care defense under § 1692.  Thus, the court will grant summary judgment in plaintiff's favor on the Oct. 24, 2011, Letter, as it relates to

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

the late fee.  <u>See</u> <u>Cool</u> <u>Fuel, Inc.</u>, 685 F.2d at 311.

IV.   CLAIM 3: AUTHORIZATION OF FEES AND COSTS OF COLLECTION.

"The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," is a violation of the FDCPA. 15 U.S.C. § 1692f(1).  "In the absence of an express agreement, whether charges are permissible within the meaning of the FDCPA *turns on California law.*"  <u>Dey</u> <u>v.</u> <u>Cont'l</u> <u>Cent.</u> <u>Credit</u>, 170 Cal.App.4th 721, 727 (2008) (internal citations omitted) (italics in original).  "It is [plaintiff's] burden to demonstrate why the collection fee is illegal, rather than defendants' burden "to justify that it is legal for it to charge a fee for [the] service."  <u>Id.</u> (quoting <u>Berryman</u> <u>v.</u> <u>Merit</u> <u>Prop.</u> <u>Mgmt.,</u> <u>Inc.</u>, 152 Cal.App.4th 1544, 1560 (2007)).

The Oct. 24, 2011, Letter included a demand for $395.00 in "ALS Fees," (<u>see</u> Gottlieb Decl., Exh. 5 at 70), which plaintiff challenges as unlawful.  (<u>See</u> Opposition at 10-13).  Plaintiff argues that the fee was illegal because defendant charged fees and costs that were unreasonable and charged liquidated damages.  (<u>See</u> <u>id.</u> at 10).

A.   <u>Reasonableness</u> <u>of</u> <u>Fees</u> <u>and</u> <u>Costs</u>.

Under § 1366.1, "[a]n association shall not impose or collect an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied."  Under the Delinquent Assessment Collection Agreement between defendant and Lomita Horizon, all fees and costs were to be charged to the delinquent owner.  (<u>See</u> Gottlieb Decl., Exh. 4 at 64).  The agreement authorized defendant to collect its fees and costs as part of the collection process and to pay itself the fees and costs it was owed out of the collection proceeds obtained from the homeowner.  (<u>See</u> <u>id.</u>).  Plaintiff asserts that, because it is undisputed that the $395.00 was a flat fee, (<u>see</u> Response to SGI at ¶ 69), the imposition of the fee automatically violates § 1366.1.  (Opposition at 11).  Plaintiff's assertion is unpersuasive.

In <u>Brown</u> <u>v.</u> <u>Prof'l</u> <u>Cmty.</u> <u>Mgmt.,</u> <u>Inc.</u>, 127 Cal.App.4th 532 (2005), the plaintiff argued that fees charged by her homeowners' association's property management company for providing certain collection services to the association, which were then passed along to the delinquent homeowner, violated § 1366.1.  <u>Id.</u> at 536.  The court held that § 1366.1 only prohibited the <u>association</u> from charging these kind of fees, not a vendor hired by the association.  <u>See</u> <u>id.</u> at 538.  The court stated:

The Act contemplates the officers and directors of an association will be volunteer homeowners.  Surely, the individual homeowners acting as volunteer officers and directors are not expected to perform all of the required services personally, and at no cost.  Instead, the association must either hire employees or contract with others to provide the services.  . . .  The costs incurred by the association, for which it levies an assessment or charges a

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

fee, necessarily include the fees and profit the vendor charges for its services.  While section 1366.1 prohibits an association from marking up the incurred charge to generate a profit for itself, the vendor is not similarly restricted.

Id. at 538-39 (internal citation omitted); see also Dey, 170 Cal.App.4th at 730 ("We conclude that under *Brown* and *Berryman*, the trial court correctly determined that 'the allegation that [defendants'] collection fees were greater than the actual costs incurred to collect the debt does not support a cause of action.'") (italics in original); Berryman, 152 Cal.App.4th at 1552 ("As the court noted in *Brown*, the statutory language prevents associations from charging inflated fees for documents and for transfer of title and using those fees for other purposes; it does not constrain the amount a managing agent may charge for these services.  Competitive forces, not the statute, will constrain the vendors' fees and charges.") (internal quotation marks and citation omitted) (italics in original) (applying Brown's analysis to Cal. Civ. Code § 1368).

As the court previously noted, "the plain language of [§ 1366.1] limits fees only to the amount the *association* needs to defray costs; it does not limit the amount a debt collection entity like ALS can charge the association (or the debtor)."  (Court's Order September 18, 2012, at 9) (italics in original).  Thus, plaintiff has no claim under § 1366.1.

"Section 1366(e), however, sets a separate limitation on the fees that can be demanded of a debtor."  (Court's Order of September 18, 2012, at 10).  Under that section, an association may recover only "[r]easonable costs incurred in collecting the delinquent assessment, including reasonable attorney's fees."  Cal. Civ. Code § 1366(e)(1); see Brown, 127 Cal.App.4th at 539 (emphasizing that an association may recover "reasonable costs" under § 1366(e)).

The court previously concluded that "[w]hether in fact the fees and costs demanded by ALS were 'reasonable' is fundamentally a factual question that will have to await further development of the record."  (Court's Order of September 18, 2012, at 10) (citing Edstrom v. All Servs. & Processing, 2005 WL 645920, at *5 (N.D. Cal. 2005)).  In her Third Amended Complaint, plaintiff states that the fee of $395.00 for sending out "a form collection letter with boiler-plate provisions" is "unreasonable and arbitrary."  (TAC at ¶ 33).  However, beyond plaintiff's general objection to flat fees, (see Opposition at 11-12), neither party has provided evidence of the reasonableness of this fee.  (See, generally, Motion, Opposition & Reply).  As such, the court declines to resolve this issue on summary judgment.  See Edstrom, 2005 WL 645920, at *5 ("Here, the record is unclear whether the charged collection fee and costs had actually been incurred, whether the amounts of the other fees were related to costs that would be incurred and whether any of the fees were reasonable.  Given these unresolved legal and factual issues, I deny both parties summary judgement on the issue of whether these fees violate section 1692f of the FDCPA.") (citations omitted).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

B.    Liquidated Damages.

Plaintiff asserts that the $395.00 fee constitutes liquidated damages prohibited by § 1671. (See Opposition at 10-11).  Section 1671 provides, in relevant part, as follows:

> (b) Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.
>
> (c) The validity of a liquidated damages provision shall be determined under subdivision (d) and not under subdivision (b) where the liquidated damages are sought to be recovered from either:
>
> > (1) A party to a contract for the retail purchase, or rental, by such party of personal property or services, primarily for the party's personal, family, or household purposes; or
> > (2) A party to a lease of real property for use as a dwelling by the party or those dependent upon the party for support.
>
> (d) In the cases described in subdivision (c), a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

Cal. Civ. Code § 1671(b)-(d).

Plaintiff argues that "liquidated damages clauses are void except where it would be impracticable or extremely difficult to fix the actual damage." (Opposition at 10).  However, this argument misstates the statute.  In 1977, "Civil Code section 1671 was amended to favor liquidated damages except in contracts for the sale or lease of consumer goods and services, or in residential leases."  Util. Consumers' Action Network, Inc. v. AT&T Broadband of S. Cal., Inc., 135 Cal.App.4th 1023, 1028 (2006).  After this amendment, "liquidated damages provisions [are] presumptively valid instead of presumptively invalid."  Edwards v. Symbolic Intern., Inc., 2009 WL 1178662, at *5 (S.D. Cal. 2009), aff'd, 414 Fed.Appx. 930 (9th Cir. 2011).  Plaintiff points to the Delinquent Assessment Collection Agreement between Lomita Horizons and ALS and alleges that she is a third-party beneficiary of that contract.  (Opposition at 11).  However, that contract is neither a contract for the sale or lease of consumer goods or services nor a residential lease. (See, generally, Gottlieb Decl., Exh. 4).  Thus, subdivision (b) of § 1671 applies here, not subdivision (d).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

Under § 1671(b), the party seeking to invalidate the liquidated damages provision must demonstrate that the provision was unreasonable under the circumstances existing when the contract was made.  See Cal. Civ. Code § 1671(b); AT&T Broadband, 135 Cal.App.4th at 1028.  "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." Ridgley v. Topa Thrift & Loan Ass'n, 17 Cal.4th 970, 977 (1998).  Plaintiff has introduced no evidence that suggests that the provision bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach, (see, generally, Opposition at 10-11), and thus has not met her burden under § 1671(b).  See Edwards, 2009 WL 1178662, at *6 ("The burden of proving that the liquidated damages clause was unreasonable at the time the contract was made is placed on the party seeking to invalidate the clause – here, Plaintiff.") (citations omitted).

Further, even if plaintiff provided such evidence, she is not a third-party beneficiary to the Delinquent Assessment Collection Agreement between Lomita Horizons and ALS, and thus cannot sue to void any liquidated damages provision it contains.  "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." Souza v. Westlands Water Dist., 135 Cal.App.4th 879, 891 (citations omitted), cert. denied, 549 U.S. 953 (2006).  "The circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement.  The contracting parties must have intended to confer a benefit on the third party." Id. (citations omitted).  "Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." Jones v. Aetna Cas. & Surety Co., 26 Cal.App.4th 1717, 1725 (1994).

In Berryman, the plaintiffs challenged certain fees charged by the defendant management company, which had entered into a contract with the plaintiffs' homeowners' association. 152 Cal.App.4th at 1553.  Plaintiffs alleged that the contract between the defendant and the association limited the amounts the defendant could charge.  However, the court found that because the plaintiffs were not parties to the association's contract with the defendant, "[e]ven assuming the allegations are true, plaintiffs are at best incidental beneficiaries and have no standing to recover under the contract. . . .  Permitting such recovery would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary." Id.

Here, the purpose of the Delinquent Assessment Collection Agreement was for the association to authorize defendant to collect delinquent homeowners' association assessment fees from plaintiff on Lomita Horizon's behalf, not to confer some benefit upon plaintiff.  Plaintiff argues that she is a third-party beneficiary because she was the "target" of the contract between the association and defendant. (See Opposition at 11).  However, this definition would substantially expand the notion of what a "beneficiary" is, and plaintiff cites no authority to support such an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

expansion.[4]  (See id.).

V.    CLAIM FOUR: REFUSAL TO ACCEPT PARTIAL PAYMENTS.

        On November 22, 2011, plaintiff's attorney sent a cashier's check to defendant in the amount of $1220.00 on plaintiff's behalf.  (See Dell Decl., Exh. 19).  On December 22, 2011, defendant returned the check to plaintiff, stating that it was "not sufficient to cure the delinquency on [her] account."  Pursuant to its contract with Lomita Horizon, defendant refused to accept any partial payments.  (See Gottlieb Decl., Exh. 4 at 64) ("Absent a Payment Plan, or other payment arrangement to which ALS has agreed, ALS will not accept payments of less than the full amount owed and such payments will be returned to Owner.").  According to plaintiff, defendant's refusal to accept partial payments violated the FDCPA's prohibitions against false and deceptive representations, § 1692e(10), and the use of unfair or unconscionable means to collect a debt, § 1692f(1).  (See TAC at ¶ 51).

        Plaintiff argues that § 1367.1(b) and Lomita Horizon's collection policy permitted partial payments.  (See Opposition at 14).  Section 1367.1(b) provides that:

> Any payments made by the owner of a separate interest toward the debt set forth . . . shall first be applied to the assessments owed, and, only after the assessments owed are paid in full shall the payments be applied to the fees and costs of collection, attorney's fees, late charges, or interest.

Similarly, the Lomita Horizons Association Assessment Collection Policy provides that:

> Any payments made shall be first applied to assessments owed, and only after the assessments owed are paid in full, shall such payments be applied to late charges, interest, and collection expenses, including attorneys' fees, unless the owner and the Association enter into an agreement providing for payments to be applied in a different manner.  Subject to the above, payments received shall be applied to the homeowner's account by the balance-forward payment method so that the oldest arrearage is retired first.  Thus, an owner's failure to pay interest, late fees, or other charges on

---

        [4]        Plaintiff relies on Durham v. Cont'l Cent. Credit, Inc., 600 F.Supp.2d 1124 (S.D. Cal. 2008), which sustained the plaintiff homeowner's claim that the collection fee imposed by the defendant collection agency was impermissible under § 1671 at the pleading stage. Id. at 1126-27.  However, the court did not address the third-party beneficiary argument on the motion to dismiss.  Indeed, when it became clear that the plaintiff was not able to point to a contract that she had signed that contained terms regarding collection fees, the court granted the defendant's motion for summary judgment.  See Durham v. Cont'l Cent. Credit, Inc., 2009 WL 3416114, *3 (S.D. Cal. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

delinquent assessments will result in continued delinquencies.

(Gottlieb Decl., Exh. 3 at 47).

Plaintiff states that these provisions "implicitly require[] that the HOA or its collection agent must accept partial payments. Otherwise, the language about the order in which to apply the payments would be useless." (Opposition at 14). However, the court previously considered and rejected this argument, stating that "[n]othing in § 1367.1(b) or the Association's collection policy requires the acceptance of partial payments; both simply set forth the required allocation of payments made towards a debt if such payment is accepted." (Court's Order of September 18, 2012, at 11).

The only new argument that plaintiff advances is that partial payments are required by the FDCPA, 15 U.S.C. § 1692h, which provides that:

> If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

Again, this statute assumes that a payment has already been accepted and says nothing about whether a debt collector is required to accept partial payments. Indeed, the Federal Trade Commission's annual report acknowledges that

> some conduct about which consumers complain does not violate the FDCPA. For example, a consumer may complain that a debt collector will not accept partial payments on the same installment terms that the original lender permitted when the account was current. Although a collector's demand for accelerated payment or larger installments may be frustrating to the consumer, such a demand generally does not violate the FDCPA.

Federal Trade Commission, Annual Report, 2011: Fair Debt Collection Practices 3 (2011), available at http://ftc.gov/os/2011/03/110321fairdebtcollectreport.pdf. In short, defendant's refusal to accept partial payments does not violate the FDCPA.

VI.     CLAIM 5: DEFECTIVE VALIDATION NOTICE.

The Oct. 24, 2011, Letter informed plaintiff that "[i]n the event you choose to dispute the debt, other than through IDR, and the debt is found to be valid, you may be charged a fee of $125 to pay for the costs of investigating and verifying the debt. Please be advised that disputing the debt may not stop the collection process." Plaintiff asserts that both the advisement that disputing the debt may not stop the collection process and the assessment of a $125 fee for investigating

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-2411 FMO (PJWx) | Date | February 18, 2014 |
|---|---|---|---|
| Title | Lorna Beeks v. ALS Lien Services, et al. | | |

the debt violate the FDCPA. (See Opposition at 15-16).

      A.    Notification that Disputing the Debt May Not Stop the Collection Process.

      Under 15 U.S.C. § 1692g(b), if the consumer notifies the debt collector in writing within 30 days that the debt is disputed, the debt collector must cease collection. "Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed[.]" 15 U.S.C. § 1692g(b).

      Plaintiff contends that defendant's statement that "disputing the debt may not stop the collection process" is contrary to § 1692g(b), and therefore constitutes an express or implied threat to take action which cannot legally be taken in violation of § 1692e(5) and a false representation or deceptive means to collect or attempt to collect any debt in violation of § 1692e(10). (Opposition at 15-17). However, the statement that "disputing the debt may not stop the collection process" appears to be an accurate reflection of § 1692g(b), which states that collection activities "may continue" unless the debtor has notified the debt collector in writing that the debt is disputed. Thus, "disputing the debt may not stop the collection process," because while the FDCPA allows debtors to dispute the debt either orally or in writing, see Riggs v. Prober & Raphael, 681 F.3d 1097, 1102 (9th Cir. 2012) ("It is settled law in the Ninth Circuit that the FDCPA allows debtors to dispute a debt orally or in writing."), only disputing the debt in writing will halt the collection process. See In re Sanchez, 173 F.Supp.2d 1029, 1034 (N.D. Cal. 2001) ("The first purpose of a non-written § 1692g(a)(3) dispute would be to provide an initial, informal red flag to the debt collectors. However, the debt collectors would not be forced to cease debt collection activities under § 1692g(b) because § 1692g(b) requires a written notice.").

      B.    $125 Fee to Investigate and Verify the Debt.

      Plaintiff asserts that the assessment of a $125 fee for investigating and verifying the debt violates 15 U.S.C. § 1692f(1), which prohibits unfair or unconscionable means to collect or attempt to collect any debt, including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." (See Opposition at 16). Plaintiff also asserts that this conduct violates 15 U.S.C. § 1692e(2), which prohibits the false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. (Id.).

      "To establish that a particular fee does not violate § 1692f(1), the debt collector must identify a state law that authorizes the fee." Schwarm v. Craighead, 552 F.Supp.2d 1056, 1080 (E.D. Cal. 2008) (citation omitted). Here, defendant points to several provisions of the California Civil Code that may authorize the subject fee. For example, § 1366(e) provides that "[i]f an assessment is delinquent the association may recover . . . reasonable costs incurred in collecting

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-2411 FMO (PJWx) | Date | February 18, 2014 |
|---|---|---|---|
| Title | Lorna Beeks v. ALS Lien Services, et al. | | |

the delinquent assessment, including reasonable attorney's fees.  In addition, under § 1367.1(a), "[a] regular or special assessment and any late charges, reasonable fees and costs of collection, reasonable attorney's fees, if any, and interest, if any . . . shall be a debt of the owner of the separate interest at the time the assessment or other sums are levied."

While these provisions do not specifically address a fee for investigating and verifying the debt, it seems clear that the cost for the debt collector to investigate and verify a disputed debt is a cost "incurred in collecting the delinquent assessment" under California Civil Code § 1366(e)(1).  Moreover, the legislature specifically prohibited charging a fee to participate in the IDR process.  See Cal. Civ. Code §§ 1363.830 & 1363.840.  The absence of any provision prohibiting fees for other methods of dispute resolution, in the face of the provisions prohibiting fees in connection with IDR, suggests that the legislature did not intend to prohibit such fees for those other methods.  The Oct. 24, 2011, Letter was careful to provide for this $125 fee only in the event that plaintiff chose to dispute the debt, but not through IDR.  (See Gottlieb Decl., Exh. 5 at 68) ("In the event you choose to dispute the debt, other than through IDR, and the debt is found to be valid, you may be charged a fee of $125 to pay for the costs of investigating and verifying the debt.") (emphasis added).

The only remaining question is whether a charge of $125 is a reasonable cost under § 1366(e)(1).  While it does not appear that this charge was ever actually imposed upon plaintiff, threatening to impose an unreasonably large charge could discourage a debtor from exercising her right to request alternative dispute resolution, see 15 U.S.C. § 1692e(5), which prohibits debt collectors from threatening "to take any action that cannot legally be taken."  Cf. Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1067 (9th Cir. 2011) ("Statutory damages under the FDCPA are intended to deter violations by imposing a cost on the defendant even if his misconduct imposed no cost on the plaintiff.") (internal quotation marks and citation omitted); Donohue, 592 F.3d at 1034 ("[T]he FDCPA's remedial purpose is animated by the likely effect of various collection practices on the minds of unsophisticated debtors.") (internal quotation marks and citation omitted).  The parties have presented no evidence as to the reasonableness of this threatened charge, (see, generally, Motion, Opposition & Reply), which will remain an issue for trial.  See Edstrom, 2005 WL 645920, at *5.

VII.    CLAIM 6: IMPERMISSIBLE COMMUNICATIONS.

The FDCPA prohibits debt collectors from communicating with consumers "in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt," unless "the prior consent of the consumer [is] given directly to the debt collector[.]"  15 U.S.C. § 1692c(a)(2).  Plaintiff argues that two letters defendant sent to her, one on December 14, 2011, and one on December 22, 2011, violate § 1692c(a)(2) because her counsel had sent a prior letter to defendant on November 22, 2011, advising ALS that he was representing plaintiff with regard to the subject debt.  (See Opposition at 17-18).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

A.     The December 14, 2011, Letter.

On December 1, 2011, plaintiff herself sent a letter to defendant notifying it that she had been informed three weeks earlier that her request for internal dispute resolution had been granted, but that she still had not received a response to schedule her appointment. (See Gottlieb Decl., Exh. 7 at 81). She asked defendant to "[p]lease let [her] know in writing within 48 hour[s] when the above issues will be address[ed]." (Id.). The Dec. 14, 2011, Letter from defendant was a direct response to plaintiff's Dec. 1, 2011, Letter. (See id., Exh. 8 at 84) ("Our office is in receipt of your letter dated 12/1/11."). The Dec. 14, 2011, Letter notified plaintiff that her Dec. 1, 2011, Letter had been forwarded to her homeowners' association and that she "should be contacted shortly to participate in internal dispute resolution." (Id.). Other than providing a contact email address for defendant, the Dec. 14, 2011, Letter contained no other information. (See id.). In short, plaintiff consented to receive the Dec. 14, 2011, Letter from defendant, and defendant did not violate § 1692c(a)(2) by sending it.

B.     The December 22, 2011 Letter.

On November 22, 2011, plaintiff's counsel sent a letter to defendant. (See Dell Decl., Exh. 19 at 1). That letter stated that "[t]his office represents Lorna Beeks in the above matter," and enclosed a cashier's check in the amount of $1,220.00, payable to "ALS." (Id.). The letter also asked defendant to "provide verification of the all [sic] charges on the account and send the verification directly to my office." (Id.). Defendant responded directly to plaintiff, rather than to her attorney, when returning the cashier's check in its Dec. 22, 2011, Letter. Defendant stated that it was returning the check because it was "not sufficient to cure the delinquency on [her] account. In order to cure your delinquency, all payments must be in the form of a cashier's check or money order and made payable in full to ASSOCIATION LIEN SERVICES." (Gottlieb Decl., Exh. 9 at 86). The letter also asked plaintiff to "[p]lease contact this office to verify the current amount prior to making your payment," and informed her that if she was unable to pay the entire balance, she could request a payment plan. (Id.).

Plaintiff did not consent to receive the Dec. 22, 2011, Letter. Plaintiff's Dec. 1, 2011, Letter never mentioned a check, making payments, or a payment plan. (See Gottlieb Decl., Exh. 7). In fact, it was plaintiff's attorney who sent the check that prompted defendant's response. (See id.). Indeed, "the December 1 letter addressed only internal dispute resolution; to the extent it can be construed as implied consent to direct communication, it is appropriate to limit the consent to the subject matter of the letter, i.e., internal dispute resolution." (Court's Order of September 18, 2012, at 18). Moreover, the fact that defendant returned the check sent by plaintiff's attorney shows that defendant received and read plaintiff's attorney's Nov. 22, 2011, Letter, and thus ALS had actual knowledge that she was represented by an attorney, before sending the Dec. 22, 2011, Letter to plaintiff. See Isham v. Gurstel, Staloch & Chargo, P.A., 738 F.Supp.2d 986, 992 (D. Ariz. 2010) ("Under § 1692c(a)(2) of the FDCPA, the 'knowledge' requirement means that a debt collector must possess 'actual knowledge' that the debtor was represented by an attorney.").

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|----------|---------------------------|------|------------------------|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

However, "a communication from a debt collector to a debtor is not covered by the FDCPA unless it is made 'in connection with the collection of any debt.'" Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 382 (7th Cir. 2010) (quoting 15 U.S.C. §§ 1692c(a) and 1693e). Thus, there are "some limits on the reach of the FDCPA," and "the statute does not apply to *every* communication between a debt collector and a debtor." Id. at 384-85 (italics in original). "Neither this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." Id. at 384. "Most district courts analyzing this issue rely on several decisions from the Seventh Circuit for guidance with respect to the relevant factors." Parker v. Midland Credit Mgmt., Inc., 874 F.Supp.2d 1353, 1356 (M.D. Fla. 2012).

In Bailey v. Sec. Nat. Servicing Corp., 154 F.3d 384 (7th Cir. 1998), a mortgage servicer sent a letter to a delinquent debtor that listed the next four payments due, the first of which was due seven days from the date of the letter. Id. at 386. The letter also expressed a willingness to "work with" the debtor to resolve the underlying delinquency. Id. The court concluded that this letter was not a communication in connection with the collection of a debt because the letter "d[id] not 'demand' any payment whatsoever, but merely inform[ed] the [plaintiffs] about 'the current status' of their account." Id. at 388-89. Further, "the debtor had not missed any payments on the forbearance agreement; although the original loan was in default, there was nothing past due on the forbearance agreement that had superseded it." Gburek, 614 F.3d at 384 (analyzing Bailey). "[T]he payment dates listed in the letter were prospective, and the letter simply warned the debtor of the consequences of missing a future forbearance payment." Id.

The case of Horkey v. J.V.D.B. & Assocs., 333 F.3d 769 (7th Cir.), cert. denied, 540 U.S. 985 (2003), clarifies that a demand for payment is not necessarily required in order to qualify as a communication made in connection with the collection of a debt. See Gburek, 614 F.3d at 385 (analyzing Horkey). In Horkey, the debtor received a call from a debt collector at work, informed the debt collector that she could not talk about the matter at that time, and hung up the phone. 333 F.3d at 772. Minutes later, the debt collector called the plaintiff's co-worker and asked him to tell the plaintiff "to quit being such a [expletive] bitch." Id. Even though the phone call contained no demand for payment, the court held that it was a communication in connection with a debt because the debt collector "was not offering general advice about how [the plaintiff] could improve her disposition. He was telling her, crudely but specifically, to be more receptive to his entreaties regarding the debt." Id. at 774.

More recently, in Gburek, the Seventh Circuit stressed again that "a communication need not make an explicit demand for payment in order to fall within the FDCPA's scope; rather, [ ] a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA." 614 F.3d at 385. In that case, the debtor was in default on her mortgage loan, and the loan servicer sent her three letters offering to discuss "foreclosure alternatives" and asking for financial information to initiate this process. Id. at 386. In reversing the district court's order granting the defendant's motion to dismiss, the court noted that in addition to whether a demand for payment was made, relevant factors include the "nature of the parties'

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|

| Title | **Lorna Beeks v. ALS Lien Services, et al.** |
|---|---|

relationship," such as whether the only relationship the defendant has with the plaintiff arises out of the plaintiff's defaulted debt, and the "purpose and context of the communications," viewed objectively. Id. at 385.

The Sixth Circuit followed the Seventh Circuit's analysis in Grden v. Leikin Ingber & Winters PC, 643 F.3d 169 (6th Cir. 2011), and held that

> for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor. . . . Obviously, communications that expressly demand payment will almost certainly have this purpose. But so too might a communication that merely refers the debtor to some other communication that itself demands payment. Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, is one that has the requisite connection.

Id. at 173 (internal citations omitted).

The cases put forth by defendant are unpersuasive. For example, in Gillespie v. Chase Home Fin., LLC, 2009 WL 4061428 (N.D. Ind. 2009), the letters in question advised the plaintiff mortgagors that their delinquent debts had been turned over to the defendant's Homeowner's Assistance Department and that options may be available to the mortgagors to resolve their delinquencies and save their homes from foreclosure. Id. at *5. Given that the letters "did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form[,]" the court found that they were not sent in connection with the collection of a debt. Id. Also, in Bailey, there was nothing past due at the time the defendant sent the letter. 154 F.3d at 386.[5]

---

[5]   Further, the court notes that defendant's conduct in citing and discussing an unpublished decision of the Ninth Circuit issued prior to 2007, (see Motion at 19-20 & Reply at 18, citing Santoro v. CTC Foreclosure Serv. Corp., 12 Fed.Appx. 476 (9th Cir. 2001)), is improper. See Holgate v. Baldwin, 425 F.3d 671, 678 (9th Cir. 2005) (litigant avoided Rule 11 sanctions for citing unpublished Ninth Circuit decision by filing notice of errata "within the 21-day safe harbor period" of Rule 11). The citation of a Ninth Circuit unpublished disposition is prohibited because an unpublished "disposition is not written in a way that will be fully intelligible to those unfamiliar with the case, and the rule of law is not announced in a way that makes it suitable for governing future cases." Hart v. Massanari, 266 F.3d 1155, 1178 (9th Cir. 2001) (Ninth Circuit issued and discharged an order to show cause why attorney should not be disciplined for violating Ninth Circuit Rule prohibiting the citation of unpublished dispositions); see also 9th Cir. R. 36-3(c) ("Unpublished dispositions and orders of this Court issued before January 1, 2007, may not be cited to the courts of this circuit, except . . . when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion[,] . . . for factual

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|----------|---------------------------|------|------------------------|

| Title | **Lorna Beeks v. ALS Lien Services, et al.** |
|-------|-----------------------------------------------|

Here, defendant's Oct. 24, 2011, Letter made it clear that plaintiff owed $1,607.50. (See Gottlieb Decl., Exh. 5 at 67) ("We are advised that as of the date of this letter, you owe the Association the sum of $1,607.50."). Likewise, the letter in Gillespie did not provide terms of payment, see 2009 WL 4061428, at *5, but that is exactly what the letter here did when it provided that payment must be made in full by cashier's check or money order. (See Gottlieb Decl., Exh. 9 at 86).

Under the circumstances, the Dec. 22, 2011, Letter was a "communication made specifically to induce the debtor to settle her debt," which is "sufficient to trigger the protections of the FDCPA." Grubek, 614 F.3d at 385. The only relationship ALS has with plaintiff arises out of its attempts to collect her delinquent homeowners' association assessments. (See Gottlieb Decl. at ¶ 14) ("ALS at all times acted as Lomita Horizon Homeowners Association's collection agent and/or non judicial foreclosure Trustee[.]"); (Opposition at 20) ("[T]he nature of the parties' relationship was always debtor and collector. ALS never held the capacity of lender or loan servicing agency."). Reviewing the purpose and context of this letter, it is clear that the "animating purpose" of the Dec. 22, 2011, Letter was to induce payment by plaintiff. See Grden, 643 F.3d at 173. The letter gave the plaintiff instructions to tender payment in a particular manner, i.e., the payment must be made "in full" and in the form of a cashier's check or money order. (See Gottlieb Decl., Exh. 9 at 86). While not a specific demand for payment, the letter certainly contemplated payment by plaintiff when it asked her to contact defendant's office to verify the current amount prior to making her payment. (See id.). Since this letter was sent at a time when defendant knew plaintiff was represented by an attorney with respect to the debt at issue, and without plaintiff's consent, the court will grant summary judgment on plaintiff's claim that defendant's conduct violated § 1692c(a)(2). See Cool Fuel, Inc., 685 F.2d at 311.

VIII.   **CLAIM 7: VOID ASSIGNMENT.**

Under § 1367.1(g), "[a]n association may not voluntarily assign or pledge the association's right to collect payments or assessments, or to enforce a lien to a third party, except when the assignment or pledge is made to a financial institution or lender chartered or licensed under federal or state law[.]"

Plaintiff argues that the assessments, along with the fees and costs of collection, were assigned to defendant by Lomita Horizon in violation of § 1367.1(g). (See Opposition at 22). Plaintiff asserts that pursuant to the void assessment, defendant "changed the terms and form of payment contrary to association rules and regulations, making it clear that the only way plaintiff could cure her delinquency was to pay ALS in full." (Id. at 23). According to plaintiff, this violates

---

purposes[,] . . . in a request to publish a disposition or order made pursuant to Circuit Rule 36-4, or in a petition for panel rehearing or rehearing en banc[.]"); 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claims preclusion or issue preclusion.").

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

the following provisions of the FDCPA: 15 U.S.C. § 1692e(2) (false representation of the legal status of the debt); 15 U.S.C. § 1692e(5) (threatening to take or taking action which could not legally be taken); 15 U.S.C. § 1692e(10) (using false or deceptive representations or means to collect or attempt to collect a debt); and 15 U.S.C. § 1692f(1) (using unfair or unconscionable means to collect or attempt to collect a debt).

Under California law,

> [t]o "assign" ordinarily means to transfer title or ownership of property, but an assignment, to be effective, must include manifestation to another person by the owner of his intention to transfer the right, without further action, to such other person or to a third person.  It is the substance and not the form of a transaction which determines whether an assignment was intended.  If from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title to the chose in action, then an assignment will be held to have taken place.

McCown v. Spencer, 8 Cal.App.3d 216, 225 (1970) (citations omitted); Recorded Picture Co. v. Nelson Entm't, Inc., 53 Cal.App.4th 350, 368 (1997) (same).

A review of the Delinquent Assessment Collection Agreement entered into by defendant and Lomita Horizon indicates that the assessments were not assigned to defendant.  The section on "Payment Processing" provides that

> [a]ll payments received by ALS for the payment of delinquent assessments and related fees and costs will be deposited by ALS into a trust account to be maintained for the benefit of its clients.  These funds received will be paid to client within five (5) business days of clearance of funds by ALS' bank. . . . ALS is authorized to pay ALS fees and costs directly from the collected funds at the same time the HOA's share of the funds are disbursed to HOA.

(Gottlieb Decl., Exh. 4 at 64).  Thus, since the contract provided that ALS would pay the funds received for the payment of delinquent assessments to Lomita Horizon after they were collected, it is clear that there was no transfer of title to the assessments from Lomita Horizon to defendant.

Moreover, the Lomita Horizon Board maintained control over many aspects of the collections process.  For instance, for defendant to record a lien against plaintiff, "a majority of the HOA's Board of Directors must vote and approve the recording of a Lien against Owner's property to collect Owner's delinquent assessments[.]"  (Gottlieb Decl., Exh. 4 at 62).  Any "decision to initiate foreclosure of a Lien shall be made by a majority vote of HOA's Board of Directors[.]"  (Id. at 63).  ALS could not initiate a foreclosure sale until Lomita Horizon or its authorized representative verified that the delinquent assessments totaled over $1800 or had been delinquent for more than 12 months.  (Id.).  In addition, Sandra Gottlieb, the President of ALS, has also stated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

that there was no intent that the assessments be assigned to ALS. (See Gottlieb Decl. at ¶ 14) ("ALS . . . was not and never has been assigned any legal title in Beeks' collection accounts with Lomita Horizon Homeowners Association, and there was no intention by me on behalf of ALS in accepting any legal assignment of the Beeks assessment collection, as all incidents of ownership and decisions regarding the account remained with the Association through its Board of Directors."). That the association maintained a significant amount of control over the collection process militates against a finding that there was an intent to assign the proceeds to defendant. In short, plaintiff has not pointed or put forth any evidence of an intent to assign the assessments from Lomita Horizon to ALS.

Plaintiff also argues that there was an "assignment for collection" of the assessments, (Opposition at 23), which "vests legal title in the assignee which is sufficient to enable him to maintain an action in his own name, but the assignor retains the equitable interest in the thing assigned." Cal. Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd., 203 Cal.App.4th 1328, 1335 (2012). However, this is not the type of assignment that was intended to be barred by § 1367.1(g). If that were so, no homeowners' association could ever hire a debt collection agency to collect delinquent assessments. In any event, California courts have approved of the hiring of a debt collection agency to collect a debt on behalf of a homeowners' association. See Brown, 127 Cal.App.4th at 538-39 ("Surely, the individual homeowners acting as volunteer officers and directors are not expected to perform all of the required services personally, and at no cost. Instead, the association must either hire employees or contract with others to provide the services. Landscape maintenance contractors are hired to mow the grass, painters are hired to paint the clubhouse, swimming pool contractors are hired to repair the pool deck, and managing agents, such as PCM, are hired to make these arrangements, and, importantly, to collect the fees and assessments levied against the homeowners.") (emphasis added); Dey, 170 Cal.App.4th at 730 (finding permissible collection fees charged by a vendor hired by a homeowners' association to perform collections work).

Apart from the assessments themselves, plaintiff also argues that "[t]he attorney fees and costs were permanently assigned to ALS." (Opposition at 22) (emphasis omitted). Under § 1367.1(g), the association may not assign its right to collect "payments or assessments." Cal. Civ. Code § 1367.1(g). The statute does not define the word "payments," and plaintiff provides no authority that fees and costs are the type of "payments" intended to be barred from assignment by the statute. California Civil Code § 1366, which is in the same chapter as § 1367.1, provides that if an assessment is delinquent, an association may recover "reasonable costs incurred in collecting the delinquent assessment, including reasonable attorney's fees." Thus, it is likely that if the legislature intended to prohibit the assignment of those costs and fees, it would have specifically mentioned in § 1367.1 that an association may not assign its right to collect costs and fees, in addition to barring the assignment of payments and assessments.

Further, while not interpreting § 1367.1, courts have approved scenarios in which debt collectors billed debtors for collection fees. In Dey, the debt collector sent the plaintiff a collection notice seeking "$1,083.81 in principal, $13.07 in interest and a collection fee of $433.52, 40

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

percent of the outstanding principal." 170 Cal.App.4th at 725. The court found that the plaintiff "d[id] not meet his burden of showing a contract or statute prohibits defendants' collection fee, and to the extent he believes the vendor services the Shores' homeowners association contracts for are noncompetitive, he may pursue the matter with the association." Id. at 730; see also Durham, 2009 WL 3416114, at *3 (approving 40% collection fee charged by the debt collector). Thus, there was no improper assignment in violation of § 1367.1(g).

IX.     CLAIM 8: HARASSMENT OR ABUSE.

        Under 15 U.S.C. § 1692d, a debt collector is prohibited from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." While not exhaustive, the statute lists several qualifying examples, such as the use or threat of violence or criminal conduct to collect a debt; the use of obscene or profane language; the publication of a list of debtors in default; and telephoning continuously with the intent to annoy, abuse, or harass. See 15 U.S.C. § 1692d. Plaintiff argues that "[i]f any of the actions whether taken individually or in combination are true," then defendant has violated § 1692d. (Opposition at 24).

        The court previously dismissed this claim because plaintiff did not "identify the specific conduct that constituted the alleged harassment." (Court's Order of September 18, 2012, at 20). Upon amendment, plaintiff added only one sentence to this claim, which states simply that "[t]his conduct includes all of the factual allegations set forth in Claims One through Eight which taken together, as a whole, were harassing, oppressing or abusive." (TAC at ¶ 79). However, this court has already held that plaintiff "cannot base a violation of § 1692d on an amalgamation of allegations regarding other purported FDCPA violations," (Court's Order of September 18, 2012, at 20), and plaintiff has provided no authority to suggest that such a claim is permissible. (See, generally, Opposition at 24). Indeed, plaintiff's claims are based solely on a series of letters sent to her by defendant, and "[l]etters, so long as they comply with specific FDCPA requirements, represent the least intrusive means of communication with debtors." Masuda v. Thomas Richards & Co., 759 F.Supp. 1456, 1465 (C.D. Cal. 1991) (holding that mailing six letters per month to a debtor did not qualify as harassing under § 1692d); see Beach v. LVNV Funding LLC, 2013 WL 1878940, at *3-5 (E.D. Wis. 2013) (holding that while the plaintiff had stated a plausible claim under § 1692e that letters the defendant debt collector sent to him were misleading or confusing, the letters did not give rise to a claim under § 1692d).

        **This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

### CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.      Defendant's Motion for Summary Judgment and/or Partial Summary Judgment/

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 12-2411 FMO (PJWx)** | Date | **February 18, 2014** |
|---|---|---|---|
| Title | **Lorna Beeks v. ALS Lien Services, et al.** | | |

Adjudication **(Document No. 43)** is **granted in part and denied in part**, as set forth below.

2.  On the issue of whether plaintiff's debt was consumer debt covered by the FDCPA, summary adjudication is **denied**.

3.  On Claim 1 (threat to record a lien prior to dispute resolution), summary adjudication is **granted for defendant**.

4.  On Claim 2 (incorrect amount of principal debt), summary adjudication is **granted for plaintiff** with respect to defendant's liability as it relates to the late fee.  Summary adjudication is **granted for defendant** as it relates to the interest charge.

5.  On Claim 3 (unauthorized fees and costs), summary adjudication is **denied**.

6.  On Claim 4 (refusal to accept payments), summary adjudication is **granted for defendant**.

7.  On Claim 5 (defective validation notice), summary adjudication is **denied**.

8.  On Claim 6 (impermissible communications), summary adjudication is **granted for plaintiff** as to the December 14, 2011, Letter.

9.  On Claim 7 (void assignment), summary adjudication is **granted for defendant**.

10.  On Claim 8 (harassment or abuse), summary adjudication is **granted for defendant**.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |